UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CR-60249-LEIBOWITZ

UNITED STATES OF AMERICA

v.

CHELSEA MICHELLE ANN COX,

     Defendant.

                           /

## UNITED STATES OF AMERICA'S RESPONSE IN OPPOSITION OF DEFENDANT'S MOTION TO DISMISS BASED ON UNCONSTITUTIONALITY OF 18 U.S.C. § 611

This Court should deny Defendant Chelsea Michelle Ann Cox's ("Cox") Motion to Dismiss Based on Unconstitutionality of 18 U.S.C. § 611 (the "Motion") because the creation of Title 18, United States Code, Section 611, did not exceed Article I's enumerated powers to establish voter eligibility because the Constitution provides that the federal government maintains authority over elections, including guarding the safety and integrity of congressional elections.

### I.      BACKGROUND

Cox is a Jamaican national who has no legal status in the United States. Cox was issued a B-2 visa in Kingston, Jamaica on January 22, 1996. Cox travelled to the U.S. as a tourist in 1999. Cox never departed upon the expiration of her visa in early 2000.

Cox used a fraudulent U.S. Virgin Island ("USVI") birth certificate to obtain a Florida Driver's License in her name on April 27, 2000. In 2013, Cox renewed her Florida Driver's License by presenting the fraudulent USVI birth certificate, a U.S. Social Security card, and a Florida Voter Information Card from Broward County indicating she registered to vote in 2012. Investigators were also able to obtain Cox's Jamaican birth certificate. Additionally, investigators obtained documentation from USVI stating there is no record of birth for Cox.

1

Agents procured Cox's voting records from the Broward Supervisor of Elections. Documentation provided shows that Cox submitted a voter registration application on August 31, 2012.[1] When completing her Florida Voter Registration Application, Cox checked the "Yes" box for the question, "Are you a citizen of the United States of America?" On the application, Cox listed her country of birth as "U.S. Virgin Island", listed her driver's license number and her address in Lauderhill, Florida, and signed the registration.

Cox's voter history shows she voted in the general elections in November 2012, November 2016, November 2018, and November 2020.[2] Regarding the 2020 general election, Cox proceeded to vote early on October 29, 2020, for the general election held on November 3, 2020.

One misdemeanor count of Voting by Alien, a violation of 18 U.S.C. § 611, was filed by Information on October 22, 2025.

## II.   ARGUMENT

While the U.S. Constitution charges the states with primary responsibility for regulating federal elections, it also provides that the federal government play a significant role in overseeing such elections. The Supreme Court has held that this role includes enacting laws to protect the integrity of federal elections. *Smiley v. Holm*, 285 U.S. 355, 366-67 (1932).

Article I, Section 4, cl. 1, of the U.S. Constitution, known as the Elections Clause, states, "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of [choosing] Senators." State governments have initial and principal authority for administering elections within their jurisdictions, but the

---

1 The statute of limitations has expired on this charge.
2 The statute of limitations has expired on all the voting charges except for the vote cast in 2020.

2

Supreme Court has recognized that the Constitution provides that the federal government maintains authority over elections, including guarding the safety and integrity of congressional elections. For example, the Supreme Court held that the Elections Clause embraces Congress's authority to provide a complete code for congressional elections and that "Congress may supplement ... state regulations or may substitute its own," including imposing "additional penalties for the violation of the state laws or provide independent sanctions." *Smiley*, 285 U.S. at 366-67 ; *see also id.* at 367 ("[Congress] has a general supervisory power over the whole subject." (internal quotation marks omitted)) The Court in *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995), further observed that by providing Congress with override authority over the states, the Framers of the Constitution sought to avoid states potentially abusing their power over congressional elections. *Id*. at 808-09.

Regarding presidential elections, the power to appoint electors belongs to the states under the Electors Clause, Article II, Section 1, cl. 2. The Supreme Court has held that, although Congress's power in the realm of presidential elections under Article II, Section 1, cl. 4, appears more limited than either the states' power under Article II or its constitutional power over congressional elections found in Article I, Section 4, cl. 1, Congress nonetheless has the constitutional authority to protect the integrity of such elections. In *Burroughs and Cannon v. United States*, 290 U.S. 534 (1934), the Court held that "[t]he importance of [the presidential] election and the vital character of its relationship to and effect upon the welfare and safety of the whole people cannot be too strongly stated" and that "Congress, undoubtedly, possesses that power ... to preserve the ... institutions of the general government from impairment or destruction[.]" *Id*. at 545.

3

Congress does not have general regulatory authority over state and local elections, but it may still exercise its constitutional power over such elections in several contexts. For example, in the Voting Rights Act Amendments of 1970, Congress, prior to ratification of the Twenty Sixth Amendment, lowered the minimum voting age in both state and federal elections from 21 to 18 and prevented states from disqualifying voters in presidential elections due to residency requirements. *See* Pub. L. 91-285, 84 Stat. 314. In *Oregon v. Mitchell*, 400 U.S. 112 (1970) states challenged Congress's authority to enact these laws concerning voter eligibility. On the voting age restrictions, four justices believed that Congress could regulate voting ages for both federal and state elections, four justices believed that Congress could not regulate voting ages for either federal or state elections, and Justice Black, writing for himself, supplied the controlling vote holding that Congress has final authority over federal elections but not state elections. *Id.* at 117-18. On the residency requirements, eight justices found that Congress possessed the legitimate constitutional authority to impose them on the states. *Id.* The justices disagreed on which specific constitutional provision supplied Congress with the authority to regulate federal elections,[3] but a majority agreed that – at least when it came to federal elections – Congress could dictate certain voter eligibility restrictions to the states. As Justice Black explained, "Any doubt about the powers of Congress to regulate congressional elections, including the age and other qualifications of the voters, should be dispelled by the opinion of this Court in *Smiley v. Holm,* 285 U.S. 355 (1932)." *Mitchell*, 400 U.S. at 122.

---

3 Justices Douglas, Brennan, White and Marshall would have relied on the Fourteenth Amendment. *See* 400 U.S. at 144 (opinion of Douglas, J.); 400 U.S. at 231 (joint opinion of Brennan, Whitem and Marshall, JJ.). Justice Black relied on the Elections Clause and the Necessary and Proper Clause. *See* 400 U.S. at 119-25. As for the residency requirements only, Chief Justice Burger and Justices Stewart and Blackmun would have relied on the Privileges or Immunities Clause and the Necessary and Proper Clause. *See* 400 U.S. at 285-86 (opinion of Stewart, J.).

*Mitchell* remains good law and has instructed Congress on the parameters of its power to regulate voting in federal elections.  Title 18, United States Code, Section 611, prohibits "any alien to vote" in a federal or mixed election for candidates for "the office of President, Vice President, Presidential elector, Member of the Senate, Member of the House of Representatives, Delegate from the District of Columbia, or Resident Commissioner." Mindful of Justice Black's controlling opinion in *Mitchell* that Congress may not intrude on state elections, there are exceptions to this prohibition, including when an alien is authorized to vote by state or local law for nonfederal candidates or issues and if the ballot is formatted in a way that the alien has the opportunity to vote solely for nonfederal candidates or issues. As an example of this exception, the District of Columbia enacted D.C. Law 24-242, the Local Resident Voting Rights Amendment Act of 2022, to allow "eligible non-citizen residents" to vote in D.C. local elections. Additionally, 18 U.S.C. § 611 does not apply when: (1) each natural parent of the alien (or, in the case of an adopted alien, each adoptive parent of the alien) is or was a citizen (whether by birth or naturalization); (2) the alien permanently resided in the United States prior to attaining the age of 16; and (3) the alien reasonably believed at the time of voting in violation of such subsection that he or she was a citizen of the United States. 18 U.S.C. § 611(c). These exceptions were added by an amendment to the Immigration and Nationality Act, the Child Citizenship Act of 2000, which provides protection for certain aliens who vote based on reasonable belief of citizenship. Child Citizenship Act of 2000, 114 Stat. 1631. None of these exceptions apply to Cox in this matter. Additionally, federal law prohibits certain unlawful activities that may occur during the voting or registration process, such as making false claims of U.S. citizenship. 18 U.S.C. § 1015(f). Also, consistent with the views of the eight-justice majority in *Mitchell*, federal law requires states to accept absentee ballots

5

for federal elections from absent uniformed services voters and overseas voters.  *See* 52 U.S.C. § 20302(a).

These are not the only federal provisions designed to regulate voting in federal elections. Section 10307 of Title 52, passed as part of the Voting Rights Act of 1965, criminalizes several acts, including fraudulent voting and voting repeatedly in the same election. Section 10307(c) prohibits, in a federal or mixed election, knowingly or willfully giving false information to register or vote, conspiring with another individual for the purpose of encouraging false registration or unlawful voting, or paying or accepting payment either for registration or voting. Section 10307(e) prohibits voting more than once in a federal or mixed election.

Likewise, Section 20511(2) of Title 52, passed as part of the National Voter Registration Act of 1993 provides criminal penalties for the fraudulent procurement or submission of voter registration applications and ballots only in an election for federal office. Section 20511(2) requires that a person act knowingly and willfully in depriving, defrauding, or attempting to deprive or defraud the residents of a state of a fair and impartially conducted election process.

While it appears that there is no case directly on point related this specific constitutional challenge to § 611 raised in the Motion, the Eleventh Circuit has previously considered – and upheld – the constitutionality of § 611. In *United States v. Knight*, this Office secured a § 611 conviction of an alien resident who improperly voted in a federal election. Knight challenged his conviction, alleging that § 611 is incompatible with the Due Process Clause, but a unanimous panel rejected this argument and affirmed the § 611 conviction. *United States v. Knight*, 490 F.3d 1268, 1272 (11th Cir. 2007).

Cox's position is inconsistent with the Supreme Court's holding in *Mitchell*, numerous statutes enacted by Congress regulating the manner of federal elections in the wake of *Mitchell*,

6

and the decades long acceptance of those regulations by federal courts. Whether it is to regulate the manner of federal elections or to preserve a distinct privilege of federal citizenship, surely the United States has the right to exclude non-citizens from voting in federal elections.

### III. CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court deny the Motion without holding an evidentiary hearing.

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By: /s/ *Christopher Killoran*
Christopher Killoran
Assistant United States Attorney
Fla. Bar no. 27999
500 East Broward Blvd., 7th Floor
Fort Lauderdale, FL 33394
Tel: (954) 660-5669
Christopher.Killoran@usdoj.gov